## PRESSED STEEL TANK CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 8024.

Circuit Court of Appeals, Seventh Circuit.

Feb. 26, 1943.

Malcolm K. Whyte and John S. Best, both of Milwaukee, Wis. (Lecher, Michael,

Whyte & Spohn, of Milwaukee, Wis., of counsel), for petitioner.

J. P. Wenchel, Roy N. McMillan, Samuel O. Clark, Jr., Sewall Key, and Carlton Fox, all of Washington, D. C., for respondent.

Before EVANS, SPARKS, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

An asserted Federal excess profits liability, imposed by Section 3* of the Vinson Naval Parity Act, upon profits realized on a Navy contract in 1935, is here contested.

Petitioner manufactured, under written contract, shells, or torpedo heads, for new naval destroyers. Our question is whether such articles are "for the construction * * * of any *complete* naval vessel * * * or any portion thereof." If the articles are so considered, Section 3 of the Vinson Act requires the contractor to pay to the United States, all profit in excess of ten per cent. of the total contract price. Petitioner argues that the torpedo heads are no part of a "complete naval vessel" but are merely an independent instrumentality used in conjunction with a naval vessel.

The United States Tax Court held against the petitioner.

On June 8, 1935, petitioner contracted with the Government to manufacture 235 steel and 227 phosphor bronze shells, for $31,043.62. Fourteen new destroyers were at the time under construction, and the court found the shells were ordered for the specific purpose of outfitting said destroyers.

Petitioner filed a report, as required by the Vinson Act, stating its profit to be $2,445.15 (less than ten per cent. of contract price). The Commissioner found its profit to be $8,417.37, or $5,050.58 in excess of ten per cent. of contract price, and assessed the $4,356.13 deficiency here in question.

The Tax Court stressed the Navy Department's custom, since 1883, of including the initial supply of ammunition for a new ship, in the construction cost of a new, complete naval vessel "for the reason that ammunition is essential to the performance by the vessel of its primary function—to fire ammunition." It pointed out that there had been administrative interpretation of the Vinson Act to include ammunition contracts, and, although the statute was later amended, no change was made in this aspect of the case, citing United States v. Midwest Oil Co., 236 U.S. 459, 481, 35 S.Ct. 309, 59 L.Ed. 673.

Respondent also relies on the defense of estoppel arising out of the petitioner's execution of a contract which incorporated Section 3 of this Act and which bound it to restore profit in excess of ten per cent. It argues that if petitioner had not signed such an agreement it would not have received the contract.

Petitioner argues that a "complete" naval vessel does not include expendable parts, like ammunition, but the phrase describes the structural part of the ship and its permanent equipment. It is conceded that subsequent ammunition supplies are purchased under a different and distinct category of appropriations, and it is urged that the inherent character of the ammunition in relation to the ship is always the same, i. e., not per se part of a naval vessel.

It states its position so clearly and succinctly that we quote from its brief:

"It is obvious that a shell is not a complete naval vessel. A portion of a complete vessel can only mean an article designed to be attached to and to become an integral part of the vessel. It must mean an article without which the vessel would be incomplete. So viewing the Act, the hull, propelling machinery, armor plate, electric wiring, built in electrical controls necessary for the efficient operation of the ship, and similar equipment, all constitute portions of the vessel, since they are designed to form a permanent part of the vessel and, if lost or destroyed, its operating efficiency would be impaired.

"There are numerous articles, on the other hand, which are carried on vessels, but are intended to be consumed or destroyed during the vessel's operating career. In this category fall supplies of food, medicines, fuel, and ammunition. A warship cannot operate without her crew or without supplies nor can it discharge its functions in time of war without ammunition. Neither the crew nor any of these supplies constitute a portion of the complete vessel. The crew can eat the food and fire the ammunition, but the vessel will still be a com-

---

* The section and subsequent amendments, appear at Title 34 U.S.C.A. § 496.

Section 3 provides that the contractor shall pay into the Treasury profit in excess of ten per centum of the total contract price, in case the award exceeds $10,000.

plete operating unit. If, however, the fire control mechanism were shot away, a boiler were to blow up, or the anchor were to be lost, the ship would be incomplete and unable to function at proper efficiency until these permanent parts had been replaced.

"Petitioner's contract was to supply ammunition, which falls into the same category as any other expendable supplies and cannot be said to constitute a portion of a naval vessel within the clear and unambiguous language of the Act."

We have found no judicial precedent to guide us. Whether the insertion of Section 3 of the Vinson Act in the contract of the parties, and petitioner's agreement therein to pay all profits above ten per cent. constitute an estoppel, we need not decide. Perhaps the agreement should not be entirely ignored, for it is argued that it was somewhat persuasive of the construction which should be given to the language "any complete naval vessel."

We are, however, ignoring this insertion of said Section 3 of the Act, as not helpful in the construction of the phrase which is here perplexing us. It was written long before this contract was executed.

Conceding that the question is not free from doubt our mature conclusion is that a "complete naval vessel" includes the shell and torpedo heads made for said naval vessel and which were to be carried as part When the vessel was originally launched, of its equipment.

It follows that the Tax Court properly included petitioner's excess profits in question.

The order of the Tax Court is Affirmed.

SPARKS, Circuit Judge, dissents.